IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

ALEXANDER S. DAVES,

    Plaintiff,

vs.

WAL-MART ASSOCIATES, INC.,

and

WAL-MART STORES, INC.

    Defendant.

3AN-12-10801 CI

COPY
Original Received
NOV - 5 2012
Clerk of the Trial Courts

## COMPLAINT

1. Plaintiff Alexander Daves, by and through his lawyer, Tim Dooley, of the Law Office of Tim Dooley, files this complaint and states as follows:

### THE PARTIES

2. Plaintiff Alexander (Alex) Daves is a resident of Anchorage, Alaska.

3. Defendant "Wal-Mart Associates, Inc." (Wal-Mart) is a Delaware corporation with service of process available in Alaska.

4. Defendant "Wal-Mart Associates, Inc." appears as Alex Daves' employer in documents to and from the Alaska Division of Employment Security (the state unemployment office).

5. Defendant "Wal-Mart Stores, Inc." (hereafter, "Wal-Mart") is a Delaware corporation with service of process available in Alaska.

6. Defendant "Wal-Mart Stores, Inc." has appeared in correspondence to this law office regarding the termination of Mr. Daves.

7. For the foregoing reasons, the true identity of his employer is unclear to plaintiff.

8. The service of process agent for both defendants is "CT Corporation System" whose address is 9360 Glacier Highway, Suite 202, Juneau, Alaska 99801.

9. Wal-Mart employed Alex Daves from December 9, 2008 to January 20, 2011.

10. During the course of his employment, Alex Daves was employed as a licensed optician in the Optical Division and also as a pharmacy technician in the Pharmacy Division.

11. Alex Daves worked in both the "A Street Wal-Mart" store, the Old Seward Highway Wal-Mart store, and the Old Seward Highway Sam's Club, all in Anchorage, Alaska.

12. The supervisors of Alex Daves gave him excellent evaluations to the extent that in December 2010 he was interviewed for the position of "Vision Center Manager" at the A Street Wal-Mart. He received top marks as a result of that interview.

13. On February 19, 2010, while working at Wal-Mart, Alex Daves became an Alaska licensed optician.

14. To meet the requirements to become a licensed optician, Mr. Daves completed 1800 hours of work under an optometrist. He completed the self study three month long Ophthalmic Career Progression Program course sponsored by the National Academy of Opticianry. He passed the four hour long National Certification Exam. He had to pay almost a thousand dollars in tuition and fees.

15. Although he was a State licensed optician and was actually doing the job of an optician while working for Wal-Mart, he had to get processed through the Wal-Mart bureaucracy to get *paid* as a licensed optician.

Complaint
Alex Daves v. Wal-Mart; 3AN-12-10804 CI    Page 2 of 9

Law Office of Tim Dooley
921 West Sixth Avenue, Suite 230
Anchorage, Alaska 99501
Phone:(907) 279-7327   Fax:(907) 258-0801

16. Unfortunately, a Ms. Meredith Wolpert caused a delay of the process for Alex Daves to become a "Wal-Mart" licensed optician.

17. Ms. Meredith Wolpert was the "Market Health and Wellness Director" for all Wal-Mart stores in Alaska.

18. Ms. Wolpert was two levels above Mr. Daves in the chain of command.

19. He did not become a "Wal-Mart" licensed option until early May 2010. This resulted in a loss of several weeks of back pay as an optician for Alex Daves.

20. Mr. Daves asked both Ms. Wolpert and the Personnel Manager for Wal-Mart how he could appeal within the Wal-Mart system to get his back pay as an optician.

21. They told him that they were unaware of any appeal options.

22. In late August, 2012 (probably August 19th), Alex Daves made a complaint about Meredith Wolpert that Ms Wolpert was not communicating with the optical department. Ms Wolpert had to approve any requests to hire more employees, had to approve ordering of certain types of equipment, had to arrange for signage in the department, had to arrange for the renewal of the doctor's (the Optometrist's) contract. The doctor could not see patients until the contract was approved by Wal-Mart and he had to reschedule about 60 patients. This lack of communication had been going on since Ms. Wolpert took the job as the "Market Health and Wellness Director" in early 2010.

23. As employees gradually terminated from their employment at the A Street Wal-Mart, Ms. Wolpert did not fill their positions.

24. Of particular impact to Alex Daves, the optical departments in the stores became severely understaffed and Mr. Daves was saddled with more work and responsibility as a result.

25. The primary reason that Alex Daves was shuffled from store to store was because

Law Office of Tim Dooley
921 West Sixth Avenue, Suite 200
Anchorage, Alaska 99501
Phone:( 907) 279-7327    Fax: ( 907) 258-0801

of a lack of staffing.

26. At the beginning of December, Alex Daves made a second complaint to the Regional Health and Wellness Director, Scott Voigt (located in Brisbane, California). Daves pointed out that for a short time, Ms. Wolpert had improved in her responsiveness, but had relapsed into her "ignore it and the problem will go away" state.

27. Wal-Mart has an "open door" policy by which any employee can bring concerns to the attention of whomever could best handle the issue.

28. As part of the open door policy, Wal-Mart has a "no retaliation" policy in place by which no employee was to be retaliated against for making a complaint.

29. Shortly after Mr Daves made his second complaint in early December 2010, Ms. Wolpert made an allegation to the "Market Asset Protection Coordinator", Kim Castle, that Alex Daves was "stealing time."

30. Ms. Castle's assigned Claudine Ontiveros to monitor Alex Daves and to confirm on video the accuracy of his entries in the "time adjustment system" (the "time clock").

31. Ms. Ontiveros was the "Store Asset Protection Coordinator" (catching shoplifters) for the "A Street" store (also called the "midtown store".)

32. Alex Daves worked between two of Wal-Mart's locations from December 20, 2010 to January 20, 2011.

33. At one location, the Old Seward or "Dimond" store, Alex Daves was able to clock in by using his employee badge.

34. At the other location, the "A Street" or Midtown store, Mr. Daves was required to key in his time manually into a computer.

Complaint
Alex Daves v. Wal-Mart; 3AN-12-_10801_ CI    Page 4 of 9

EXHIBIT A
Page 4 of 9

35. Mr. Daves often had to work past 8:00 pm, but the Wal-Mart system would not permit him to input any hours worked after 8:00 pm. This was the fault of Wal-Mart's system and not the fault of Alex Daves.

36. Because of this, Alex Daves frequently lost pay for hours that he worked after 8:00 pm.

**Wal-Mart's Claim That He Stole 40 Minutes of Time on January 11, 2011**

37. On January 11, 2011, Alex Daves drove a UPS package to the UPS store near Tudor Road.

38. Ms. Ontiveros jumped to the conclusion that Mr. Daves was not working during that time.

**Wal-Mart's Claim That He Was Working While "Off the Clock" on January 18, 2011**

39. On January 18, 2012, Ms. Ontiveros found that Alex Daves had worked 1.5 hours without being "on the clock." (Please note that "1.5 hours" will appear three times in this complaint. "1.5 hours" is not a typo.)

40. That was true. Mr. Daves was working and had been unable to properly enter his begin time in the computer. This was the fault of the cumbersome system used by Wal-Mart.

**Wal-Mart's Claim That Alex Daves Had Stolen 1.5 Hours of Time on January 18, 2011**

41. Ms. Ontiveros claimed that Mr. Daves had stolen 1.5 hours of time on January 18, 2011. Her claim was not true.

42. In reality, Mr. Daves was performing work at the Old Seward store and Ms. Ontiveros did not bother to check that he had been working at the Old Seward store.

Law Office of Tim Dooley
921 West Sixth Avenue, Suite 200
Anchorage, Alaska 99501
Phone:( 907) 279-7327    Fax: ( 907) 258-0801

### Wal-Mart's Claim That He Was Working While "Off the Clock" on January 19, 2011

43. At the end of her investigation, Ms. Ontiveros claimed that Mr. Daves was working "without being on the clock" on January 19, 2011. Her claim was not true.

44. Working, without being on the clock, is a violation of Wal-Mart policy.

45. On that day, Alex Daves left the "A Street" store to run a work errand for Wal-Mart. He returned about 15 minutes later.

46. Ms. Ontiveros, watching the video cameras, incorrectly assumed that when he left the store for 15 minutes, Mr. Daves had taken a lunch break.

47. Mr. Daves later took his lunch inside the manager's office. There was no video camera in the manager's office.

48. Because she had assumed that Mr. Daves had already taken his lunch, Ms. Ontiveros assumed that Mr. Daves was actually working when he was back in the manager's office.

49. Because Mr. Daves entered into the computer that he had taken lunch in the manager's office, and this conflicted with Ms. Ontiveros' assumptions, she made the claim that Alex Daves had been working without "being on the clock."

### Wal-Mart's Claim That Alex Daves Had Stolen 1.5 Hours of Time on January 19, 2011

50. Ms. Ontiveros also claimed that on the same day, January 19, 2011, Mr. Daves had stolen 1.5 hours of time. Her claim was not true.

51. On that day, Alex Daves began the work day at the "A Street" store and used the computer to enter his start time.

52. In the afternoon Mr. Daves left the "A Street" store and drove to the "Old Seward" or "Dimond" store and worked 1.5 hours until the vision center closed for the day.

53. At the "Old Seward" store, Mr. Daves actually punched out on the time clock at the end of the day.

54. Ms. Ontiveros watched a video of Alex Daves leaving the "A Street" store and jumped to the conclusion that Alex Daves had completely left work for the day when he left the A Street store.

55. Ms. Ontiveros saw in the Wal-Mart records that Alex Daves was claiming time for work that was done after he left the "A Street" store.

56. Ms. Ontiveros did not check the time clock or the video cameras at the Old Seward store and jumped to the conclusion that Mr. Daves had stolen 1.5 hours of time.

### Wal-Mart Terminates Alex Daves

57. On January 20, 2011 Wal-Mart terminated Alex Daves.

58. The decision was announced to Mr. Daves before he had any chance to correct the conclusions that had been reached by Ms. Ontiveros.

59. Mr. Daves appealed, six times, within the Wal-Mart system but was unsuccessful.

60. Wal-Mart also contested his application for unemployment benefits, alleging that Mr. Daves was a crook and had stolen time.

61. The hearing officer for the unemployment office heard the testimony on March 22, 2011 and read the submitted exhibits and ruled in favor of Mr. Daves.

Complaint
Alex Daves v. Wal-Mart; 3AN-12-10801 CI    Page 7 of 9

62. Also on March 22, 2011, Mr. Daves filed an ethics complaint to Wal-Mart alleging that Ms. Wolpert had retaliated against Mr. Daves for filing his earlier complaints with Mr. Scott Voigt.

63. Mr. Daves also included other facts concerning Ms. Wolpert's activities.

64. As a result, Wal-Mart asked Ms. Wolpert to submit a letter of resignation, and she did so.

65. Essentially, Wal-Mart carried out a negligent investigation of Mr. Daves at the request of Ms. Wolpert whose motive was to retaliate against Mr. Daves.

66. Wal-Mart ended up terminating an honest and conscientious employee and labeling him as a thief.

## Breach of Contract

67. Plaintiff realleges the foregoing paragraphs.

68. The foregoing amounts to a breach of contract, in particular, a breach of the covenant of good faith and fair dealing implied in all employment contracts in the State of Alaska.

69. Wal-Mart owes Mr. Daves for the back pay he did not receive when he was working as an optician, for those times when Wal-Mart found that he was working off the clock, and for those times he worked after 8:00 pm, but was not paid for the work.

## Wrongful Termination

70. Plaintiff realleges the foregoing paragraphs.

71. The foregoing amounts to wrongful termination.

Law Office of Tim Dooley
921 West Sixth Avenue, Suite 200
Anchorage, Alaska 99501
Phone:(907) 279-7327   Fax:(907) 258-0801

## PRAYER FOR RELIEF

Plaintiff prays that judgment be entered in his favor and against defendant as follows:

Awarding compensatory relief for general and special damages, including loss of past, present, and future earnings, the exact amount to be proven at trial.

If warranted, assessing punitive damages against the defendant.

Awarding plaintiff's costs and attorney fees.

Awarding plaintiff prejudgment interest.

Awarding punitive damages if the facts warrant such damages.

And awarding any other relief as the court deems just and equitable.

DATED the 2nd day of November, 2012 at Anchorage, Alaska.

Law Office of Tim Dooley

By: *[signature]*
Tim Dooley
Alaska Bar No. 8310114
Attorney for Alex Daves

Law Office of Tim Dooley
921 West Sixth Avenue, Suite 200
Anchorage, Alaska 99501
Phone: (907) 279-7327   Fax: (907) 258-0801